872 So.2d 949 (2004)
STATE of Florida, Appellant/Cross-Appellee,
v.
Stephen Alan CANTRELL, Appellee/Cross-Appellant.
No. 5D03-562.
District Court of Appeal of Florida, Fifth District.
April 8, 2004.
Rehearing Denied May 21, 2004.
*950 Charles J. Crist, Jr., Attorney General, Tallahassee, and Timothy D. Wilson, Assistant Attorney General, Daytona Beach, for Appellant/Cross-Appellee.
James B. Gibson, Public Defender, and Nancy Ryan, Assistant Public Defender, Daytona Beach, for Appellee/Cross-Appellant.
GRIFFIN, J.
The State of Florida appeals the downward departure sentence imposed by the lower court on defendant, Stephen Alan Cantrell ["Cantrell"]. Cantrell cross-appeals the lower court's order denying his motion to correct sentence pursuant to Florida Rule of Criminal Procedure 3.800(b)(2).
On January 4, 2002, Cantrell was charged by information with Count I, grand theft, and Count II, criminal mischief$200 or less. The charges arose from an incident where Cantrell, without permission, took a golf cart from the Legacy Club at Alaqua Lakes and damaged the golf course while driving the golf cart. After a jury trial, but before the verdict, Cantrell pled guilty as charged pursuant to a plea agreement. The court withheld adjudication and sentenced Cantrell to eighteen months' probation on Count I and six-months' probation on Count II, to be served concurrently.
On October 29, 2002, Cantrell was charged with violation of probation based in part on his arrest for aggravated assault with intent to commit a felony and carrying a concealed weapon. On November 18, 2002, Cantrell was charged by information with aggravated assault with a deadly weapon, to wit: a motor vehicle and/or a baton.[1] On January 8, 2003, Cantrell admitted to the violation of probation and pled nolo contendere to aggravated assault.
At sentencing, the State presented the criminal punishment code scoresheet to the court, which showed the lowest permissible sentence was a prison sentence of 16.05 months and the maximum sentence was ten years. Counsel for Cantrell requested the court consider a downward departure from the guidelines based upon the fact that the crime was committed in an unsophisticated manner and was isolated. *951 The court sentenced Cantrell to thirty days' imprisonment followed by one year community control for grand theft as well as thirty days' imprisonment for criminal mischief, to run concurrently. As to the aggravated assault charge, the court adjudicated Cantrell guilty and sentenced him to thirty days' imprisonment followed by one year and eleven months of community control.
The State objected to the downward departure and asked the court for clarification as to why the downward departure sentence was imposed. The court stated, "Well, I do think it was a very unsophisticated offense, and impulsive, but it was very rare and very abnormal, and that's the reason I'm departing."
On February 19, 2003, the State appealed the downward departure sentence imposed by the court. On May 27, 2003, Cantrell filed a motion to correct sentence pursuant to Florida Rule of Criminal Procedure 3.800(b)(2), asserting in relevant part:
6. No written order setting out the departure reasons appears in the court file. The Florida Supreme Court requires such a written order to be filed in every departure case, either contemporaneously or nunc pro tunc where "neglect and inadvertence" result in failure "to complete the ministerial act of actually placing [departure] reasons in a separate order." Pease v. State, 712 So.2d 374, 376 (Fla.1997) (see attachments.)
7. Since the time of notice of appeal was filed in this case, the Fifth District Court of Appeal has held that "any downward departure based on [lack of sophistication, the isolated nature of the occurrence, and remorse] must be supported by written reasons or orally pronounced findings of fact on each of the three elements." State v. Thompson, 844 So.2d 814, 2003 WL 21105368 (Fla. 5th DCA May 16, 2003) (emphasis added; see attachments.)
(footnote omitted). Cantrell requested the court enter written nunc pro tunc orders including findings of fact to memorialize its oral downward departure reasons.
On May 30, 2003, the court entered an order dismissing the motion to correct sentence, explaining: "The Court has no jurisdiction to hear this motion because it concerns the issue on appeal."
Cantrell then filed a motion for rehearing on the above order dismissing his motion to correct sentence on the ground that Rule 3.800(b)(2) expressly authorizes criminal defendants to file motions during the pendency of appeals regarding sentencing issues, and that jurisdiction automatically returns from the appellate court to the trial court until an order is filed on the merits of a 3.800(b) motion or until sixty days elapses from the date the motion was filed.
On June 25, 2003, the court entered an amended order denying the motion to correct sentence, stating, "The failure to set forth written reasons for a departure sentence or a revocation of probation is not a scrivener's error that can be corrected nunc pro tunc by the Court and, therefore, cannot be corrected through a Motion to Correct Sentence." Cantrell then filed a notice of cross-appeal of the amended order on his motion to correct sentence.
The State correctly urges on appeal that the record does not support the orally stated downward departure reasons and that they are insufficient as a matter of law. See State v. Thompson, 844 So.2d 814 (Fla. 5th DCA 2003). The downward departure sentence must be vacated and remanded so that the lower court can re-sentence Cantrell in accordance with the guidelines.[2]
*952 SENTENCE VACATED and REMANDED.
PLEUS and ORFINGER, JJ., concur.
NOTES
[1] The offense arose from a "road rage" incident during which, according to the arrest report, Cantrell repeatedly swerved towards the victim's vehicle after she may have cut him off in traffic. The arrest report further stated that Cantrell drove his vehicle into the passenger side of her vehicle, exited his vehicle armed with an expandable baton and threatened her. The victim drove her vehicle away from him, but he followed her to a supermarket where he jumped onto the hood of her vehicle and beat the windshield with his fists. Upon his arrest, law enforcement searched his vehicle to find a hunting knife and an expandable baton.
[2] Given our disposition, the issue on cross-appeal, though interesting, is moot.